Good morning, your honors. Please the court. My name is Roger Siegel and I represent the appellant, Mr. Rivera-Ramos. We are here today on a related question to the prior case, which is a Taylor analysis of the attempt statute in New York. I don't believe there's any dispute as to the applicable Federal core or generic definition of the substantial step test. I'm going to ask you, the Second Circuit has already decided this question? Is that no? I'm not aware of that, your honor. U.S. v. Fernandez, didn't they basically say that the New York differences between substantial step and dangerous proximity are basically semantic and that the attempt statute falls within the generic definition? Well, I would say, your honors, that if that's what the Fernandez decision held, that I don't believe this circuit should follow that for a number of reasons. I think that under United States v. Taylor, where the court analyzed the Arizona attempt statute, basically this court laid out the analysis, which was, number one, look at the words of the statute. Are the words facially overbroad? And despite the government's valiant attempts to persuade the court to the contrary, I don't think there's any doubt that the words of the statute are much broader than the Federal definition. The words of the statute require that the evidence, that there be an intent to commit the crime and acts which tend to affect the commission, tend to affect the commission, tend to affect, tends essentially means merely leaning or moving to some degree. It takes you a little bit more in one direction. As in the relevance definition, something that's relevant is evidence which tends a little bit more than not to lead to one conclusion. The huge difference between the New York statute and the substantial steps statute is that there is no, absolutely no quantifying amount, quantifying the act. And federally, there's substantially. In New York, all it is is tending to affect. Now, the reason why I say that I would respectfully request that the court not follow the Fernandez decision would be because the, I've tried to engage in a fairly extensive review of the specific state court decisions in New York. And if you look at those specific, several of those decisions, I think that some of them show that the New York courts have specifically interpreted the statute more broadly than the substantial step standard. And under Taylor, if the defendant can point to at least one, it's not up to the defendant to just create some theoretical possibility that the statute could be applied broader. If you go back in time to the New York tests, the Rizzo case is sort of one of the early ones where they're basically saying, you've kind of got to be practically there. And then they keep going through to later years. I think it's Mamoubian basically saying it has to be dangerously near, but not the final act. I mean, if you follow it, I'm having some trouble understanding why you make your argument that the New York cases aren't in fact consistent. I acknowledge, Your Honor, that there are New York cases which do state the test that Your Honor referred to, the dangerously near or dangerously close test. But the cases, I would say, as between themselves and even in the same opinion, appear to be somewhat, if you will, schizophrenic, in that in some of the cases the standard that's applied is whether there was an act or some act or an act taking in the general direction, taking the movement in the general direction of the substantive crime. But specifically what I would ask the Court to look at are the specific case results of some of the cases, which I think reflect that, in fact, at least some New York courts are interpreting that broad language in the statute broader than the substantial step test. If you take a look at the very recent case of Narsday, there you had a neighbor reporting a man who appeared to have some mental problems to be in the general vicinity of a neighbor's house with a weapon. The police got there. The defendant wasn't any, hadn't done anything further in furtherance of, he had some notes written down that showed that he had some sort of a plan, whether it was a coherent plan or not, because he had mental problems, but that he had some, written down a plan to kill two individuals in the house. When the police arrived, he hadn't come any closer to committing a crime. In fact, he had gone further away from it. He didn't have the weapon. The weapon was in the snow. There was nothing showing that the defendant ever went on the property, ever pointed the gun, ever tried to break into the property, ever did anything to show any acts beyond preparing for the offense and going to the general vicinity of the house. If you take a look at the case of Stewart, and one of the specific problems that I tried to point out with the statute is there seems to be a problem with the intent requirement. In Stewart, that was the case where there was an off-duty police officer who was leaving a bar late at night, and you have a person that was drunk knock on his window with a gun on the passenger side window saying, hey, get out. The off-duty officer pulled his car out, got out of the car, pointed his weapon at the perpetrator, and the perpetrator kept his weapon pointed at the police officer and ran away, and they found him drunk with his face down and bloodied just a little while far away. The issue, though, in terms of the intent and the reason why I raised it was there was nothing reflecting that the intent was an intent to commit the offense of robbery as opposed to an intent to commit the offense of assault or menacing the police officer. There was, in fact, the evidence suggested that it was more likely than not that it was menacing or intent to kill a police officer, but there was nothing suggesting that he had an intent to rob the officer. And then finally, in the case of Jones, where the defendant was one among three girls who were alleged to have taken a gym bag, and they brought the gym bag to a different floor. The person that owned the gym bag came down and confronted them, found them basically rummaging through the gym bag, and they were assaulting her in some way, and then an unrelated third person came and yanked a gold chain, or tried to yank a gold chain off the owner of the gym bag who was trying to retrieve her things. The defendant was found not guilty of robbery with an intent to commit the offense of robbery, with the person aiding her, but found guilty of robbery with injury. And the trial court said there was no possible way that that could be upheld, because there was no evidence that the defendant had attempted to rob the chain, especially given the fact that the jury had found that the defendant had not aided another person. The court of appeals overturned the trial court's dismissal, and it appears that the way, and one reason why I brought that case up, is it appears that the way the statute reads, tending to affect the commission of a crime, it can be read, and it looks like it was read in that case, to mean that there's a temporal relationship between, all you have to establish is there's some sort of temporal relationship. In other words, under the facts of this case, the fact that this... In that case, which one is that one again? Jones. That's your best case. It's tough for me to tell you which is the best case. I usually like to say I've got the best case. There's another. The other case, Mahubian, is one where an insurance fraud case where the defendant allegedly hired some people to rob or stage the robbery of an art collection that he owned, and the allegation was that the charges were that he was trying to defraud the insurance company. There was no applications or anything filed with the insurance company. The dissent noted in its opinion laid out several cases which actually, when you look at those cases, applied either a substantial step test or a test that was lower or broader than the substantial step test, and in those cases where there had been no filing of an insurance claim, there had been, they could not upheld those findings of guilt. So what you've got is a case under the New York statute upholding an insurance fraud, attempted insurance fraud where there's never been a submission to the insurance agency, yet as the dissent points out, there are all these other cases under the substantial step test or a test broader than that test which have held the contrary, that you cannot find a person guilty of attempt where there's been absolutely no showing of a filing. I think that was in footnote 7 in the. In that Mahoudian case, the court basically saying, well, this isn't your basically robbery assault type thing. We've got this long kind of preparation and conduct that goes on in an insurance fraud that doesn't really follow these other cases. So it was an unusual fact pattern and the court said that. Yes, and I would agree with that, but I think the important point is that with the, is that the court did acknowledge that it was essentially mere preparation and that it, even though it was a longer fact pattern, that they were preparing to commit the insurance fraud case without directly doing anything to defraud the insurance company. I realize I've gone over my time. Thank you. Appreciate it. Good morning, Your Honors. May it please the Court. I'm Angela Woolridge on behalf of the United States. In this case, the district court properly determined that the defendant's prior conviction for attempted robbery was in fact a crime of violence. The New York statute for robbery meets the categorical test for crime of violence and the New York statute for attempt meets the categorical test for crime of violence. Contrary to the defendant's contention, the New York attempt definition is not any broader than the generic definition of attempt. And while we may not have defined what is in fact that contemporary definition of attempt, whether we look to the Federal definition as we cited in the Nelson case, whether we look to the common law that this Court has applied in the Sarbia and the Taylor cases, or whether we look to the model penal code, it seems consistent that what is required is an intent to commit a crime plus a substantial step towards the commission of that crime. New York doesn't say it's a slight step, right? New York does not say slight step. What New York says is that with intent to commit a crime, a defendant engages in conduct which tends to affect the commission of such a crime. And at issue here is whether tending to affect suffices to satisfy that substantial step requirement. Both the New York statute and the common law definition, the Federal law definition and the model penal code, they all require that requisite intent. And that's not at issue here. But instead, what is at issue is the conduct. And the New York case law shows us that if anything, the New York statute, the requirement of tending to affect the commission of the underlying crime, is applied more stringently. And the New York court of appeals said that it was more stringent. Correct. In fact, they've said that several times. Recently, in the Mobubian case, they expressly declined to adopt the model penal code substantial step test, finding that the New York law is, in fact, more stringent. Are you depending upon the Second Circuit case's authority here? I'm not depending upon it, Your Honor, although I do recognize that they have, in applying the same statute, they have found that it does, in fact, meet the test for a crime of violence. However, I think even if we look at the case of the New York case law, I think it's more stringent. Why are you not relying on it? Well, Your Honor, quite frankly, I did not include that case in our argument. However, I think that, obviously, I think that it does this Court can look to its sister circuit in their analysis. That would be pretty interesting if we had a circuit split on this issue, wouldn't it? And we would invite the Court not to take that step and to have a circuit. Well, then wouldn't it be a good idea to rely on it? Well, Your Honor, I think that it would be a good idea. So. So given that opportunity, what's your position? Given that opportunity, I would ask the Court to rely on the Second Circuit Fernandez case. And not to create a circuit split over what New York means given that it's in, what New York law means given that it's in the Second Circuit. That's correct, Your Honor. If we look at the New York law, it's clear that they have not only several times expressly stated that their statute is more stringent than the substantial step test. But when we look at the facts of the case, it's clear that they've applied it in that regard as well. The defense counsel cited several cases that he says that they don't require nearly as much as a substantial step. Sure. And I'd like to take a moment to address those cases. First, he cited State of New York v. Naradze. And this is a case where the evidence showed that the defendant planned to kill a female acquaintance and her husband, that the 911 call came in reporting a man in the neighborhood with a shotgun. The defendant said that he did have a weapon and pointed to it. At the time, it was about 5 to 10 feet away. The defendant then told a reporter that his intention was to slay the husband and the wife and to have their children watch. And it was found that he had a to-do list with a step-by-step plan for breaking into the residence. So if we were to look that into the context of whether or not there was an intent and a substantial step, it's clear that it was here. The defendant admitted to his intent. He had the to-do list specifically writing out his intent and the steps he were going to take it. And he took a substantial step. With a weapon that he could use to commit the offense, he goes to the very location where he is intended to commit it. Next is the Stewart case. This case as well, the defense suggests that, well, perhaps the intent was just to intimidate a police officer. Well, first we have to notice that this was not an on-duty and uniformed police officer. This was someone who, although he was employed as a police officer, was acting in his off-duty capacity, in fact, attending a party. The defendant's actions of knocking on the door and telling him to get out of the car shows his intent to commit a robbery, either to get his car from him or to get him out of the car perhaps to rob him. So when you look at the facts, there's more evidence of the underlying intent to commit the robbery. And by pointing a pistol into the window of a car, that certainly is a substantial step, because that is something that's something taken in the direction to try to obtain the intent to commit a robbery.  This is another case where the defense suggests that, well, perhaps the intent was to obtain a person's property from them by using that intimidation by putting the pistol into the window of the car. The Jones case is the next case the defense relies upon. The Court expressly said that they do not and cannot pass upon the legal sufficiency of the evidence underlying the convictions. The only issue that that Court discussed was the repugnancy of the verdicts and said that because one charge required proof of an entirely different element of another charge, that there was no repugnancy in the verdicts. Interestingly enough, the Court did point out that the trial court appeared correct in its observation that there was not sufficient evidence for the attempted robbery and suggested that the defense raise that issue upon appeal because that issue was preserved. So it's interesting in that case that both the trial court and the appellate court both opined that there was not substantial evidence pursuant to New York attempt law to find that it would be attempt, but only addressed the issue of repugnancy of the verdicts. Also, and as this as the Court pointed out, in the Mububian case, which was the last case that the defendant relies upon, here there is a very complex, very involved scheme to defraud an insurance company. And in this case where it's very different than, for instance, a case like a robbery, where you would expect to see some sort of physical act, whether it be pointing a gun, such as in the Stewart case, in this case there were so much preparation done that the Court found that even though the New York statute requires more than the Model Penal Code substantial step, even though New York law is more stringent, these preparations, the steps taken towards this insurance fraud scheme were so sufficient, were so significant, that it did bring that person within that dangerous proximity as required by the New York law. So I think that it's our position that all those cases do in fact show that the New York statute requires more, if not more, to find that an attempt of an underlying crime is committed. This Court has addressed the virtually identical Nevada attempt statute in the Sarvia case, as my colleague from Nevada had recently discussed, and had found that the language in that statute was sufficient to be a crime of violence using the same analysis in looking at the cases. And that's exactly what we have here. The New York statute and the New York case law applying that statute show that it is not applied any more broadly, and in fact, according to the courts, it's more stringent than the substantial step test. Thank you, Karen. Yes, we'll give you a minute. Just with respect to the issue about the New York courts stating that their test is more stringent, what the New York courts have said, not the substantial court test, what the courts have said is it's apparently more stringent. And in Mahubian, they said that we do not adopt the modifical definition in order to conclude that some acts, even if preparatory in a dictionary sense, go sufficiently beyond mere preparation as to be characterized as an attempt for criminal liability to be imposed. What I would suggest, Your Honors, is the difference between the mere, the dangerous proximity test, although in some cases may be stricter than the substantial step test, as indicated in some of the cases that I pointed out, can actually be less strict. What you have here in the case in Mahubian where they, where the courts said that is a case where there was admittedly just preparations. So under the substantial step standard, which is clearly stated that it has to go beyond mere preparations, that wouldn't be enough. But under the dangerous proximity test, they held that we have explicitly recognized that there comes a point where it is too late in the stage of preparation for the law to conclude that no attempt occurred. So what you have is the New York court applying its standard to cases where there's nothing beyond mere preparation, although in some cases it could be, it could be applied stricter than the Federal test. In the cases that I've cited, it has been applied more broadly. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Siler (6th Cir.), McKeown, Cjj